UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 12-12240-RGS

NICK RING

v.

STEPHANIE SOKOLOVE,
STEPHANIE ASSOCIATES, INC.,
STEPHANIE ASSOCIATES, LP, and
LEO FONESCA

MEMORANDUM AND ORDER ON DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT

March 18, 2014

STEARNS, D.J.

Nick Ring, a bartender, brought this action against his former employers, Stephanie Sokolove, Stephanie Associates, Inc., and Leo Fonseca, alleging violations of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-219, and Mass. Gen. Laws ch. 151, §§ 1-22 (Wage Act), more specifically by: (1) failing to main true and accurate records of the hours that he worked; (2) failing to adequately inform him of the "tip credit" taken against the minimum wage as required by FLSA § 203(m) and Mass. Gen. Laws ch. 151, § 7; and (3) failing to pay him the full sum of the wages

that he was due.[1]  Before the court is defendants' motion for summary judgment on Ring's federal and state "tip credit" claims.  For the reasons to be explained, summary judgment will be denied.

BACKGROUND

The material facts in the light most favorable to Ring as the nonmoving party are as follows.  Ring is a resident of Watertown, Massachusetts.  Stephanie Sokolove is the sole officer and director of Stephanie Associates, Inc., a Massachusetts corporation that owns and operates Stephanie's on Newbury in Boston (Stephanie's).  Stephanie's is an upscale bar and restaurant located in the Back Bay neighborhood of Boston.

In October of 2009, Ring learned from Jay Fiore, an employee at Stephanie's, of an open bartender's slot.[2]  On October 26, 2009, Stephanie's

---

[1] Ring also attempted to bring a class action lawsuit on behalf of all other persons who were or are employed as waiters, waitresses, and bartenders at the Boston restaurants owned and operated by defendants (Count II).  The class action count was dismissed earlier in the litigation. *See* Dkts. #37, #40.

[2] Whether Fiore was a manager or merely an employee at Stephanie's is disputed.  Defendants maintain that as the Bar Manager at Stephanie's, it fell to Fiore to explain to Ring the mechanics of the tip pool in which Stephanie's tipped employees participated, Dkt. #55 ¶¶ 4, 6 (although as Ring points out in the Addendum to his opposition, defendants are very vague about anything that Fiore may or may not have said).  Ring by way of an affidavit contends that defendants have "exaggerate[d] Fiore's responsibilities" in an effort to persuade the court that Fiore's explanation of Stephanie's payroll policies to Ring satisfied their duties under the FLSA and the Wage Act.  The scope of Fiore's managerial authority and the

hired Ring for the position. On the date of his hiring, Stephanie's General Manager Mike Letterman told Ring that he would be paid "$2.63 per hour plus tips." Dkt. #56 at 3. Ring started work immediately as a server and bartender. Also, on or shortly after the date he was hired, Leo Fonseca, another General Manager at Stephanie's, confirmed to Ring in so many words that he would be paid $2.63 per hour plus his share of the tips. Neither Fonseca nor Letterman told Ring in so many words that Stephanie's was obligated to make up the difference between the $2.63 per hour rate and the Massachusetts minimum wage ($8 per hour)[3] if Ring's total weekly earnings fell short. Neither Fonseca nor Letterman mentioned the term "tip credit." On March 16, 2012, Fonseca accused Ring of stealing money from the cash drawer and fired him.[4]

DISCUSSION

Summary judgment is appropriate when, based upon the pleadings, affidavits, and depositions, "there is no genuine issue as to any material fact, and [where] the moving party is entitled to judgment as a matter of

---

adequacy of his tip credit wage explanation – if one was in fact given – are for the jury to resolve.

[3] The applicable federal minimum wage was $7.25 per hour.

[4] Ring also alleges in his Complaint that managers at Stephanie's routinely altered the books to "shave" employees' reported weekly work hours. Defendants deny the allegation.

law." Fed. R. Civ. P. 56(c); s*ee also Celotex Corp. v. Catrett,* 477 U.S. 317, 323-324 (1986); *Mesnick v. Gen. Elec. Co.,* 950 F.2d 816, 822 (1st Cir. 1991). The court must "accept the properly documented facts in the light most favorable to the nonmovant, resolving all genuine conflicts in his favor, while at the same time refusing to indulge rank speculation or unsupportable hyperbole." *Conward v. Cambridge Sch. Comm.,* 171 F.3d 12, 18 (1st Cir. 1999). A dispute of fact is genuine only if there is sufficient evidence to permit a reasonable jury to resolve the point in the nonmoving party's favor. *NASCO, Inc. v. Pub. Storage, Inc.,* 29 F.3d 28, 32 (1st Cir. 1994). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-250 (1986) (citations omitted).

**Count I – The FLSA**

The FLSA requires employers to compensate employees a minimum hourly rate for each hour worked. 29 U.S.C. § 206(a). A partial exception for "tipped employees" is carved out in § 203(m) of the FLSA.[5] The

---

[5] Section 203(m)(1)-(2) provides that "[i]n determining the wage an employer is required to pay a tipped employee, the amount paid such employee by the employee's employer shall be an amount equal to –

> (1) the cash wage paid such employee which for purposes of such determination shall be not less than the cash wage required to be paid such an employee on August 20, 1996; and

4

exception permits an employer to allocate an employee's tips to satisfy the statutory minimum wage requirement provided two conditions are satisfied: (1) the employer must inform the tipped employees of the provisions of § 203(m); and (2) tipped employees must retain all the tips received except those shared in a tipping pool among employees who customarily receive tips. *Id.*

Section 216 of the FLSA creates a private right of action against any employer who violates § 206 (the minimum wage requirement) or § 207 (the overtime compensation requirement). *See* 29 U.S.C. § 216(b). Section 216 permits employees to recover from the employer "the amount of their unpaid minimum wages, or their unpaid overtime compensation." *Id.* Section 216 does not, however, authorize a direct right of action for a violation of § 203(m). Rather, the offending employer loses the right to claim the tip credit in satisfaction of its minimum wage obligation to the employee. *See Reich v. Chez Robert, Inc.*, 28 F.3d 401, 404 (3rd Cir. 1994) ("When the employer has not notified employees that their wages are being reduced pursuant to the Act's tip-credit provision, the district court may

---

> (2) an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in paragraph (1) and the wage in effect under section 206(a)(1) of this title."

not equitably reduce liability for back wages to account for tips actually received.").

As Judge Boudin explained in *Martin v. Tango's Restaurant, Inc.*, 969 F.2d 1319 (1st Cir. 1992),

> [i]t may at first seem odd to award back pay against an employer, doubled by liquidated damages, where the employee has actually received and retained base wages and tips that together amply satisfy the minimum wage requirements. Yet Congress has in section 3(m) expressly required notice as a condition of the tip credit and the courts have enforced that requirement. It does not matter . . . whether Congress deemed notice a matter of fairness to the employee, a device for enforcing minimum wage payments, or both. If the penalty for omitting notice appears harsh, it is also true that notice is not difficult for the employer to provide.

*Id.* at 1323 (citations omitted).

That said, the issue remains as to just how much notice the employer must give to the employee to satisfy § 203(m). In this Circuit, the answer is for the most part provided by *Tango's Restaurant*. In that decision, the First Circuit held that

> [w]e read section [20]3(m) to require at the very least notice to employees of the employer's intention to treat tips as satisfying part of the employer's minimum wage obligations. It could easily be read to require more - for example, notice of 'the amount . . . determined by the employer' to constitute wages - but how much more need not be decided in this case.

*Id.* at 1322. In the 20-odd years that have followed since *Tango's Restaurant*, the First Circuit has never intimated that more than Judge

Boudin's threshold notice requirement is in fact needed, and the few other circuit courts to take up the issue have looked to his formulation as the benchmark definition. *See, e.g., Reich v. Chez Robert,* 28 F.3d at 403, citing *Tango's Restaurant*, 969 F.2d 1319; *Kilgore v. Outback Steakhouse of Florida, Inc.*, 160 F.3d 294, 298 (6th Cir. 1998) (same).

This would seem consistent with what one would think is the common-sense import of the law – to insure that employees who depend on tips for their livelihood are not left in the dark about their employer's obligation to insure that at the end of the day (or week, more accurately), they take home at least the statutory minimum wage. And it would also seem that Judge Boudin was correct in his speculation that Congress intended the notice requirement of § 203(m) to have an *in terrorem* effect by doubly penalizing the employer who ignores its mandate. Further, the burden placed on the employer – notice – as Judge Boudin pointed out, is not difficult to meet. As the Sixth Circuit noted in commenting on *Tango's Restaurant*, adequate notice does not require a lawyer's dissection of the intricacies of the statute.

> As to how the employer may deliver the information to the employee, we conclude that an employer must provide notice to the employees, but need not necessarily 'explain' the tip credit as argued by the plaintiffs. The statute requires that the employee be 'informed' of the tip credit. As the magistrate

7

>   judge concluded, 'inform' requires less from the employer than
>   the word 'explain' would.

*Id.*, 160 F.3d at 298.

Defendants, of course, argue that they met the *Tango's Restaurant-Kilgore* standard: "Letterman explicitly told Ring the wage component of his minimum wage was $2.63, and the rest of the regular minimum wage was comprised of tips." Dkt. #56 at 4. They further contend that Letterman explained the tip credit in a "common sense way" that Ring could easily understand. As defendants argue, with a flush of rhetorical accuracy, "Stephanie's was not required to use any 'magic word' when informing Ring of the tip credit." *Id.* If believed, and if undisputed, this evidence might well satisfy a jury that Stephanie's met the standard as set out in *Tango's Restaurant* and *Kilgore*.[6] Ring, however, in his affidavit

---

[6] Defendants rely heavily on *Pellon v. Business Representation Int'l, Inc.*, 528 F. Supp.2d 1306, 1310 (S.D. Fla. 2007), a Southern District of Florida case which held that communicating to plaintiffs that they would receive $2.13 per hour and the reminder of their pay in tips is sufficient to satisfy the notice requirement of 29 U.S.C. § 203(m). "FLSA does not require a rigorous explanation to employees about how the tip credit works. In fact, such an explanation would serve no logical purpose. Provided that the employees are advised and receive a wage plus tip amount equal to minimum wage or higher (and the Court does not see in the record that Plaintiffs have earned less than minimum wage in their adjusted wage rate plus tips), they do not need to understand how the statutory mechanism applies to their employer. In fact, 'employee understanding' would be an untenable legal standard in cases such as this one." *Id.* at 1312. The case does not appear inconsistent in material respect with *Tango's Restaurant-Kilgore.*

disputes defendants' account. He contends that he was "never informed orally or in writing that the Restaurant would make up the difference between the hourly rate and the minimum wage if in any week [he] did not earn enough in tips that [his] total earnings at least equaled the minimum wage." Dkt. #60 at 2. Clearly, given this assertion, summary judgment for defendants must be denied.

**Count III – Massachusetts Wage Act Claim[7]**

Because I agree with plaintiff that a Massachusetts court would interpret the tip credit provision, Mass. Gen. Laws ch. 151, § 7, to establish no lower floor than the one set out by the First Circuit in *Tango's Restaurant*, summary judgment must be denied on this claim as well.

ORDER

For the foregoing reasons, defendants' motion for partial summary judgment on Counts I and III of the Complaint is <u>DENIED</u>. The Clerk will set the case for trial by jury or without, as the parties may elect.

SO ORDERED.

/s/ Richard G. Stearns

_____
UNITED STATES DISTRICT JUDGE

---

[7] Defendants had inadvertently omitted to include Count III in the motion for partial summary judgment. Plaintiff does not oppose the motion for leave to amend to correct the omission.